## LEWIS A. GREENE *et al. vs.* SAMUEL N. SMITH *et als.*

New shares of capital stock in a corporation whose stock is at a premium, issued at par to the stockholders, are not income and do not belong to a life tenant. Trustees entitled to such new stock should treat it as a part of the *corpus* of the trust estate.

A testamentary trust directed the trustees to pay to E., the testator's daughter, personally, for her separate use, and to no one for her, such part of the income as she should

desire for her use ; to pay such other sums as might be required for her children's educa-
tion ; to deposit the residue of the income, and to withdraw the same, if needed, for
the support of E., and the support and education of her children.

*Held,* that the trustees should put the money paid to E. at her independent disposal.

*Held,* further, that the trustees in good faith and with reasonable care should pay such
money as E. required " for her use," interpreting the words liberally as for herself
and the proper maintenance of her household, but not extending them to uses foreign
to herself.

*Held,* further, that the trustees had a direct duty as to the education of the children, to
be performed by them if the education was neglected by E.

*Held,* further, that the deposits could be used only if needed t... the support of E., or the
support and education of the children. Otherwise they were to remain subject to the
final dispositions of the will.

BILL IN EQUITY for instructions.

*May* 10, 1890. DURFEE, C. J. The complainants, Lewis A.
Greene and Forrest Greene, trustees under the will of Allen
Greene, late of Providence, deceased, bring this suit for instruc-
tions. The will, among other property, bequeaths to the com-
plainants one hundred shares of the capital stock of the New York,
Providence & Boston Railroad Company, and fifty shares of the
capital stock of the Providence & Worcester Railroad Company,
in trust, to collect the income therefrom, and, after paying certain
charges and expenses, " to pay monthly to said Emma R. Smith,"
the testator's daughter and the wife of Samuel N. Smith, " person-
ally for her separate use (and to no one for her) such part of the
remainder of said rents and income, after the making of said
payments, as my said daughter shall desire for her use, and to pay,
from time to time, such other and further sums from said income
as may be required to give a good and sufficient education to the
child or children of my said daughter," but expending at no time
more than they have in possession, and the balance, not so expended,
to deposit in the Rhode Island Hospital Trust Company, from time
to time, on participation account, and the same to withdraw, from
time to time, with the interest accumulated thereon, if necessary, for
said Emma's support, and for the support and education of her
children and their descendants. It appears from other parts of the
will that the interest of said Emma in said shares of stock is a life
interest, with limitations over to herself in certain events, to her
children and their descendants in other events, and in still other
events to the complainants free from the trust. Said Emma has
only one child, a son. .

In May, A. D. 1889, the Providence & Worcester Railroad Company voted to increase its stock, and offered the new shares, which were at a premium, to the stockholders at par, at the rate of one new for every six shares belonging to them. The complainant believed that the right to take the new shares was income, and acting on this belief took the eight shares falling to the fifty held by them in trust for said Emma, at her request, taking them in their individual names, and paying for them out of their own money, but under an agreement with her to transfer them to her on her repaying the money. She has repaid $400, leaving $400 not yet repaid. In January, A. D. 1890, the Directors of the New York, Providence & Boston Railroad Company, under authority conferred by the stockholders, decided to increase its capital stock, and offered the new shares to the stockholders at par at the rate of one new share for every four shares held by them. The complainants this time took advice, and, being advised that the rights or options to take the new shares were principal, sold the rights or options falling to the one hundred shares held by them in trust as aforesaid for $3,250. Said Emma claims said sum and also said eight shares as income. The complainants ask to be instructed whether they shall treat them as principal or as income.

We instruct the complainants to treat said sum and said new shares as principal, said shares being paid for as such. In _Brown & Larned, Petitioners_, 14 R. I. 371, 373, this court decided that new shares of corporate stock, representing a surplus, distributed _pro ratâ_ to the stockholders, are not to be regarded as income, and do not belong to the life tenant. The case virtually decides the case at bar; for if there be any material difference between them, it is that in the case at bar the surplus value is more clearly principal. The effect of issuing the new shares is simply to distribute the surplus value, previously belonging to the old, to the new as well as the old, proportionately lessening the value of the old. "Such a readjustment," say the court in the case above cited, "cannot be said to result in income." We do not see how the life tenant acquires any greater right than he or she previously had to such surplus value merely because of its wider distribution. "It is not income, but capital in a changed form." _Biddle's Appeal_, 99 Pa. St. 278, 283. And this is the doctrine, which is, at

least in cases like this, the more generally supported by the decisions of the courts in England and the other States. *Atkins* v. *Albree,* 12 Allen, 359; *Biddle's Appeal,* 99 Pa. St. 278; *Brinley* v. *Grou,* 50 Conn. 66; *Matter of Kernochan,* 104 N. Y. 618; *In re Barton's Trusts,* 17 Law Times Reports, N. S. 594; *In re Bromley, Sanders* v. *Bromley,* 55 Law Times Reports, N. S. 145; Cook on Stock and Stockholders, § 559. The rights or options or the proceeds of them, as representing a portion of the original capital, should again be capitalized, so that the income or interest may go to the life tenant for life, and the *corpus* remain subject to the ulterior dispositions of the will.

It is urged for the life tenant that she is entitled, if not to the whole of said rights or options, to so much as represents the surplus earnings between the death of the testator and the offer of the new stock. There is some authority for this contention; but we think the better doctrine is, that the life tenant is entitled only to the dividends so long as they are duly declared; and this right she continues to enjoy without abatement, after the new shares are issued, by getting the dividends on them if they are taken by the trustees for the trust, or, if the options are sold, by getting the income of the proceeds as invested for the trust. It is not claimed in this case that there was any improper withholding of the corporate earnings after the testator's death, which occurred October 3, A. D. 1888, less than eight months before the new shares were voted by the Providence & Worcester Railroad Company, and only fifteen months before they were voted by the New York, Providence & Boston Railroad Company.

The trustees ask us to instruct them whether said Emma is entitled, if she demands it, to the entire net income of the trust property, without any duty on their part to see to its application, or whether they are bound to see that it is applied, in due degree, to the education of her child or children, and also in regard to their duty as to so much of the income as they have or may have on deposit in the Hospital Trust Company on participation account. The will is not minutely explicit, but we think it is clear that there is a duty imposed upon the trustees which they will not properly discharge by paying the entire net income to said Emma, if she desires it, regardless of the uses for which she may desire it. The

will directs the trustees " to pay monthly to said Emma R. Smith personally, to her separate use (and to no one for her), such part " of the net income as she " shall desire for her use." The direction was apparently intended to serve two purposes, namely, *first*, to make sure that the money paid to said Emma shall be put at her disposal, independently of any other person; and, *second*, to limit the amount to be paid to her to such part of the net income as she " shall desire for her use." The first purpose calls for no comment. It is the second purpose that needs elucidation. The language is, not such part as she shall desire, without limit, but such part as she " shall desire *for her use.*" Doubtless the words are to be interpreted liberally, so as to include, besides what she may desire for merely personal uses, what she may desire to maintain or help maintain her family and household, and to keep up her home in a style corresponding with the means bequeathed to her. The will does not manifest a purpose to stint her unnecessarily in these respects; but we think it does show a purpose not to have her apply said income to uses foreign to herself; as, for instance, not to lend or give it to another for his or her uses, not likewise her own. We think the trustees would violate their duty if they were knowingly to pay over to her any part of the income for such a purpose. It may be thought that such a duty is too delicate or difficult for the trustees. We think not. It only calls for the exercise of good faith and reasonable care; for if, in the exercise of such care, they honestly pay the money to said Emma for her use, their responsibility is *pro tanto* at an end. And if, in regard to any particular demand, they are in doubt about their duty, this court is open to them.

We think the trustees also have a duty to said Emma's child or children. The will does not direct them, as counsel seems to suppose, to pay to said Emma such further sums, besides what she desires for her use, as shall be required to give her child or children a good education, for her to expend them, but makes it their duty, as we read the will, to make payment when necessary directly themselves. Of course, if she uses the money paid to her, so far as it is required, to give them a good and sufficient education, that will exonerate the trustees; but if she neglects the duty, it is for them to perform it.

In regard to money deposited as directed in the Trust Company

it seems to us that the will is plain. If at any time the current income is inadequate, they are to withdraw whatever is necessary for the support of said Emma, and for the support and education of her children and their descendants, from the money so deposited, but otherwise they are to let it remain for final disposition under the will.

We think we have sufficiently answered the questions put to us.

*Joseph C. Ely,* for complainants.

*Robert W. Burbank,* for respondents.

# WASHINGTON COUNTY.