LUCY J. LAUMAN, Appellant, v. WILLIAM P. FOSTER, et al.

**Corporations:** UNDIVIDED EARNINGS: INTEREST OF LIFE TENANT. A stockholder has no right to the earnings of a corporation until a dividend has been actually declared, either in form or in substance; and the enhanced value of the stock by reason of withholding the earnings inures entirely to the benefit of the same, from which a life tenant can derive no advantage prior to an order for its distribution by the corporation.

**Same:** WILLS: LIFE ESTATE IN EARNINGS. A will bequeathing a life estate in the income of corporate stock means a bequest of the earnings of the stock; the term income having the same significance as the term dividend.

**Same:** INCOME FROM CORPORATE STOCK. A cash dividend upon corporate stock, whether accepted in cash or additional stock taken in lieu thereof under an option granted the stockholders, is acquired as a dividend and goes to a life tenant. But where the corporation increases its capital stock not as a dividend, and permits its stockholders to acquire the new stock in proportion to the amounts held by them, the new stock thus acquired is to be treated as capital, and any amount realized by a trustee holding stock as a

part of his trust, either from a sale of the privilege or an exercise of the same himself and a subsequent sale at a profit, belongs to the body of the trust, and the life tenant is only entitled to the dividends arising therefrom.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

FRIDAY, MARCH 15, 1912.

SUIT to require defendants, as trustees of the estate of George C. Lauman, to pay to plaintiff certain moneys as income derived therefrom; the same having been obtained by virtue of being given the right, as stockholders in a bank, to subscribe for additional stock. The petition was dismissed and plaintiff appeals.—*Affirmed.*

*Power & Power* and *Thos. Hedge,* for appellant.

*Poor & Poor,* for appellees.

LADD, J.—The plaintiff is the widow of George C. Lauman, who died many years ago. His will was admitted to probate, and therein, among other provisions, he bequeathed his personal estate to three trustees, directing them to deal with it substantially as he might have done, if living, and "that all the rest and residue of my estate be held together, without division, by my trustees during the life of my wife, to whom they shall pay the entire net income of my estate, after deducting taxes and proper expenses of the trust. Payments of the income shall be made every three months, beginning with the first day of the month in which I die." Other portions of the will indicate what shall be done with the property after the widow's death. Among other securities of the estate which came into the trustees' possession were one hundred shares of stock in the Continental National Bank of Chicago, Ill., and with reference thereto it was stipulated that at that

time the capital stock of the bank was $2,000,000, and its surplus, including all undistributed earnings, was $206,648.24; that from 1888 until January 1, 1903, dividends were regularly declared and paid quarterly to the trustees on the shares held by them at the rate of 6 percent per annum, from then until January 1, 1910, at the rate of 8 percent per annum, and thereafter at the rate of 10 percent per annum. In April, 1901, the surplus, including undisputed earnings, had increased to $802,360.91, and the capital stock was increased to $3,000,000. The bank, in doing so, gave to its stockholders the option to subscribe in proportion to their holdings for the new issue of stock, at par, and the trustees, pursuant thereto, on April 6, 1901, subscribed for fifty shares, paying therefor $5,000. On September 26, 1902, the trustees disposed of the shares so purchased for $13,903.75.

In April, 1906, the surplus, including the individual earnings, had become $1,016,052.99 and the capital stock was increased to $4,000,000; the stockholders being given the option to subscribe as before, with the exception that the price was fixed at $200 per share. The trustees purchased thirty-three shares on the 3d day of April, 1906, paying therefor $6,600, and on June 25, 1908, sold the same at the net price of $7,220. Prior to this increase, the book value of the stock was $134 per share, and it was $151 afterwards. In February, 1906, prior to this increase of stock, the market value was $259 and thereafter $240 per share, though it decreased by May 2d to $228 per share.

In September, 1909, the surplus, including all undivided earnings, became $3,991,608.12, and the bank increased its stock to $5,000,000, permitting the stockholders to subscribe as before, but at $175 per share. On September 6, 1909, the trustees procured fifty shares of the stock at the price stated, and on December 9th of the same year sold the same at the net price of $14,401.85. Prior to

this increase, the book value of the stock was $199 and after the increase, $154 per share. On August 3, 1909, prior to the increase, the market value was $320 per share, but on September 18th, after the increase, it had fallen to $267 per share. The trustees have retained the original shares. The option given the stockholders to purchase the additional stock at less than its book value was because of their interest in the capital, surplus, and undivided profits held by the bank. It had been long established and had a valuable and increasing good will, with good prospects of larger business and profits in the future.

Upon this statement of facts, the plaintiff claims the sums of money derived by the trustees in the subscription for and purchase of the stock and sale thereof as a part of the net income directed to be paid to her in the clause of the will quoted; she having received the cash dividends declared on all the stock held by the trustees. It will be observed that the trustees, by exercising the options, derived altogether $15,175, and that doubling the capital stock in 1901 impaired the book value of the stock from about $140 per share to $127; that, inasmuch as more than book value was exacted for the increased capital stock in 1906, such value was enhanced thereby $17 per share, while the book value was reduced by the increase of capital stock in 1909 $45 per share. The sole inquiry is whether the difference between what the trustees paid for the stock in the manner described and received on sale should be paid to the plaintiff as income from the estate, or preserved as a portion of such estate for the remaindermen.

It should be said at the outset that whether the earnings of a corporation shall be distributed among its shareholders is purely discretionary, and that until a dividend has been actually declared, either in form or substance, the stockholder has no claim thereto as against the corporation. Any enhancement in the value of stock by reason

1. CORPORATIONS: undivided earnings: interest of life tenant.

of withholding the earnings inures entirely to the benefit of the *corpus,* and the life tenant derives no advantage therefrom. This proposition was well expressed in *Moss's Appeal,* 83 Pa. 267 (24 Am. Rep. 164): "As a general rule, nothing earned by a corporation can be regarded as profits until it shall have been declared to be so by the corporation itself, acting by its board of managers. The fact that a dollar has been earned gives no stockholder the right to claim it until the corporation decides to distribute it as profit. The wisdom of such distribution must of necessity rest with the corporation itself. From motives of prudence and self-interest, it is frequently desirable to add all or a portion of the earnings to the capital. This is sometimes necessary as a basis of credit for more enlarged operations. It is often a wise exercise of discretion for a corporation to strengthen itself in this way, and with such discretion a stockholder can not interfere. His only remedy is by an appeal to the ballot at the election for directors. But where a corporation, having actually made profits, proceeds to distribute such profits amongst the stockholders, the tenant for life would be entitled to receive them, and this without regard to the form of the transaction." See *Soehnlein v. Soehnlein,* 146 Wis. 330 (131 N. W. 739).

"Income," as used in a will bequeathing stock, means the same thing as "dividend." *Reed v. Head,* 6 Allen (88 Mass.) 177. In *Spooner v. Phillip,* 62 Conn. 62 (24 Atl. 524, 16 L. R. A. 461), it was said: "The use of the stock seems to be limited to the receipt of dividends and income. The word 'dividends,' if unqualified, signifies dividends payable in money. The word 'income' has a broader meaning, but hardly broad enough to include things not separated in some way from the principal. It is not synonymous with 'increase.' The value of the stock may be increased by good management, prospects of business, and the like. But

2. SAME: wills: life estate in earnings.

such increase is not income. It may also be increased by an accumulation of surplus but, so long as that surplus is retained by the corporation, either as surplus or increased stock, it can, in no proper sense, be called 'income.' It may become producing but it is not income." *Smith v. Hooper,* 95 Md. 16 (51 Atl. 844). See *Gibbons v. Mahon,* 136 U. S. 549 (10 Sup. Ct. 1057, 34 L. Ed. 525). The difficulty involved in the present case is to determine what shall be required as dividends. The new shares of capital were not issued as stock dividends, but at a price, specified by the bank, much below the market value, and the option to buy was extended to the shareholders only. In *Kalbach v. Clark,* 133 Iowa, 215, the differences of opinion with reference to stock dividends was referred to, and the American or Pennsylvania rule approved as best sustained in principal and by authority; and it was there said that "all pure dividends, whether in cash or in stock or other property, are a part of the income, and, when declared, should go to the life tenant, and not to the remainderman, as it is not a part of the corpus of the property, but a part of the income derived from the use and management thereof. Any dividends, so called, presumptively belong to the life tenant, as they are, in the absence of showing to the contrary, assumed to have been divided as profits. If, however, the so-called stock dividends represent the corporate capital—that is, represent nothing but the natural growth or increase in the value of the permanent property, so that there is merely a change in the form of ownership— such stock should go to the remainderman; for in such cases the dividend is a dividend of capital, representing simply an increase in the value of the physical property, good will, or other thing of tangible value."

Where a cash dividend is declared, and at the same time an option granted to the stockholders to acquire additional stock at a price equal to the dividend, the cash or the stock taken in lieu thereof is acquired as a dividend,

and will go to the life tenant. *Brown v. Brown,* 72 N. J.

3. SAME: income from corporate stock.

Eq. 667 (65 Atl. 739); *Davis v. Jackson,* 152 Mass. 58 (25 N. E. 21, 33 Am. St. Rep. 801). But where a corporation increases its capital stock without declaring a dividend, and gives the stockholders the option to subscribe for the new stock in proportion to that held by them, this is regarded by many authorities as incident to the ownership of the stock, and does not belong, as a privilege, to the life tenant. Such increment is treated as capital, to be added to the trust fund for the benefit of the remaindermen, and this is so whether the trustee of the estate subscribes for the new stock for the benefit of the trust, or sells the right or option to subscribe for a valuable consideration. Of course, the dividends from the additional stock or increase from the proceeds of the sale of the right or option would be a part of the income to be paid to the life tenant. 2 Cook on Corporations, section 559; *Hite v. Hite,* 93 Ky. 267 (20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189); *In re Eisner's Appeal,* 175 Pa. 143 (34 Atl. 577); *Greene v. Smith,* 17 R. I. 28 (19 Atl. 1081); *Brinley v. Grou,* 50 Conn. 66 (47 Am. Rep. 618); *Re Kernochan,* 104 N. Y. 618, 630 (11 N. E. 149); *Smith's Appeal,* 140 Pa. 344 (21 Atl. 438, 23 Am. St. Rep. 237); *Adkins v. Albree,* 12 Allen (Mass.) 359; *Moss's Appeal, supra; Re Bromlet,* 55 L. T. N. S. 146; 10 Cyc. 560; *Malan v. Hitchins,* 63 L. J. N. S. 797. Extracts from some of these decisions will indicate the reasons for this conclusion.

*Hite v. Hite, supra:* "It was also error to hold that the privilege, given by a corporation to its stockholders, to take additional stock at par, when the stock is worth more, belongs to the life tenant. This right stands upon a different footing from the claim to a stock dividend. It is a mere incident of the old stock. It is a right appurtenant to it, and as such is a part of the capital. It can not be fairly considered as income, but is inherent in the

shares of stock in their creation. While the value of the right must depend essentially upon the success of the business of the company, this does not alter the nature of the right, and the stock is properly a part of the corpus of the estate of the owner. This incident of the stock was, at the death of the testator, a part of his estate, and the option merely operated to increase or broaden the capital, or change the manner of the investment. It gave the right to a larger interest in the capacity of the company to make profits, but not to the income itself."

*In re Eisner's Appeal*: "An increase of capital by the issue of new stock to persons paying for it at its par value implies the very reverse of profits earned. The fact that the privilege of subscribing for it is given to existing stockholders, and that it may be sold by them at a premium, is far from proving that the premium is to be regarded as income, the payment or withdrawal of which leaves the original capital unimpaired. The property of a corporation, after payment of liabilities, belongs to the existing stockholders, who therefore are entitled to any and all enhancements of its original value; and such enhancement belongs, not to a tenant for life, but to the remainderman. *Scholefield v. Redfern*, 32 Law J. Ch. 627; *Hubley's Estate*, 16 Phila. (Pa.) 327; *Middleton's Appeal*, 103 Pa. 92. When new stock is issued at par, the actual increase of capital is precisely the amount thus received by the company; and if the new stock has, at the time, an intrinsic value beyond what was paid for it, this presumptively can only be because the holders of the new stock have been put on a footing of equality with holders of old stock, and thus become entitled to share with them in a distribution of assets, should the company be dissolved. The gain of the new stockholders is the precise measure of loss in intrinsic value of the capital of the old stockholders."

In *Brinley v. Grou, supra*: "In the case before us,

neither in fact nor form did the corporation make any division, or part with any portion of its earnings in behalf of the stockholders. On the contrary, it manifestly desired to retain its surplus intact and increase its strength by the addition of a million of dollars to its capital; its accumulated earnings all remained its property, and subject to the risks of its business. It offered to the shareholders the privilege of paying in this sum; investors were of the opinion that this privilege was worth a premium, not because it carried with it the right then or ever to demand any portion of the surplus retained in good faith by the company, but presumably because they believed that from the income from its capital, surplus, and business it would make regular dividends largely in excess of the ordinary rate of interest. The increase in market value above cost of the shares constituting the capital of this fund, resulting either from an accumulation of profits by the corporation, or from its vote to permit each one of its proprietors to purchase a fraction of a new share, because he was the owner of an existing one, belonged to and formed a constituent part of this last, and, of course, of the capital. If the trustees had sold the existing share, and thereby had realized the increased value resulting from either of the mentioned causes, the entire proceeds of the sale would have still formed a part of the capital; and the excess in market value above cost of the right to purchase such fraction also belongs to and forms a constituent part of the existing share, and, of course, of the capital; and when the trustees realized this excess by a sale of the privilege the proceeds remained a part of that capital. In short, all of the increase of value which is realized from the act of the trustees in selling either the existing share with the privilege annexed, or the privilege severed therefrom, belongs to the capital; purchasers pay it from their money; all that is realized from the act of the corporation in making dividends belongs to the life tenant."

It seems to us that the reasons presented in the above quotations are unanswerable, and that these are in point, as applied to the case at bar. Prior to each increase of stock, that held by the trustees, including the part of surplus and earnings undistributed, belonged to the estate, and not to the life tenant. The bank, in increasing its capital stock, did not undertake to distribute any of its earnings or surplus. All of both were retained as a part of its funds with which to continue in the development of its business. In issuing the additional stock in 1901, the book value of each existing share decreased about $13 and in 1909 the decrease therein by increasing the capital stock amounted to $45 per share. As the existing shares belonged to the estate, the manifest effect was to impair the book value of the existing shares to the extent the book value of the new shares exceeded the price paid. And, conversely, as the price of the additional stock issued in 1906 exceeded the book value of existing shares, that of the latter was enhanced by increasing the capital stock by $17 per share. If, then, the life tenant be entitled to the income on the new stock or the proceeds of the sales of the options, in what manner has her income been impaired? Not at all. This being so, there is no ground for construing the option to buy additional stock as something it does not purport to be—a dividend. The bank, in increasing its capital, parted with nothing, but greatly increased its assets by the sale of stock. Every cent of its surplus and earnings continued intact and exposed to the hazards of its business operations.

Aside from the book values as stated, whatever the trustees obtained on sale for the additional stock was the excess of the market values over such book values, and represented the proportional increase in value of the new and original stock, and was in no legal sense a part of the income. For this reason, market values ought to be given scant, if any, consideration in determining whether an

item should be deemed income, or a part of the estate, to be preserved for the remainderman. The stock market is proverbially unstable, about as variable as the tides, and, as remarked, in *Moss's Appeal, supra,* though well enough "where the parties are about to realize, but, upon a question of values between life tenants and remaindermen, a judicial decision should go down through the shifting sands of the stock market until it reaches the solid rock of actual values." Moreover, the market value may include the growth and increase of the corporate plant or business, and therefore include profits not to be classed as surplus or earnings. For these reasons, book, rather than market, values are of primary inportance in solving problems like that involved in the case at bar.

The surplus, including the undistributed earnings, continued in the bank, notwithstanding the different increases of capital stock, and doubtless is there yet, if not lost. Of course, the stockholders were given the options, because of their interest in the capital, surplus, and undistributed earnings of the bank. They were then entitled to the proportional share of these upon dissolution of the corporation, or might have obtained that much upon the sale of existing stock. In granting the option, the corporation no more than protected this right in the outstanding stock without changing its character from capital to income. The option was of value, for the reason that it represented the privilege of buying shares at less than their value, but therein did not impair the income of the life tenant; for the latter became entitled to the dividends as on the new stock, if bought with funds of the estate, and, in any event, the income on the proceeds realized from the disposition of the option. True this involved a depreciation in the value of existing shares; but who shall say what part of the value of the option represented the growth of the business, its good will, and the like, and how such depreciation is to be distributed as between these and the accumulated sur-

plus? Can the option be said to represent the latter, when the bank has not undertaken in form nor in substance to distribute it to the shareholders? Shall there be an accounting in court between the remainderman and the life tenant every time the option to buy additional stock is given the trustees?

In *Holbrook v. Holbrook,* 74 N. H. 201 (66 Atl. 124, 12 L. R. A. (N. S.) 768), the difficulties in the way of treating such option or right to subscribe for additional stock as income are suggested; but, notwithstanding these, the court reached the conclusion that such options or rights, at least in part, should be so regarded. That decision is contrary to the great weight of authority, and, as we have attempted to show, is not sound in principle.

As observed in *Re Kernochan,* 104 N. Y. 618 (11 N. E. 149): "From the shares in question, no income could accrue, no profit arise, to the holder until ascertained and declared by the company and allotted to the shareholder, and that act should have been deemed to have been in the mind of the testator, and not the earnings or profits as ascertained by a third person, or a court, upon an investigation of the business and the affairs of the company, either upon an inspection of their books or otherwise."

The value of the right to subscribe necessarily depends upon the efficiency of the corporation's management, its location, its good will, and the like, and the right to subscribe for additional shares of stock, when given the stockholder, merely affords him the opportunity, because of owning the stock, of participating in a larger way in the capacity of the corporation to earn profits, and is to be regarded as an incident or an attribute appertaining to the stock. It follows that, though plaintiff was entitled to the income derived from the new stock, or from the profits derived from the sale thereof, the right to subscribe for additional shares formed no part of the income derived from the estate of the testator.—*Affirmed.*