IN RE TRUST OF GEORGE M. BUTLER, deceased; STATE SAVINGS BANK, Council Bluffs, trustee.

No. 52741.

(Reported in 154 N.W.2d 705)

446

December 12, 1967.

Porter, Heithoff & Pratt, of Council Bluffs, for Donald G. Tomanio, Jr. and Nancy O'Brien, beneficiaries under Will of George M. Butler, deceased.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for Finley Frost, executor of Estate of Nancy Butler, deceased.

Proctor R. Perkins, of Council Bluffs, for State Savings Bank, trustee in re Trust of George M. Butler, deceased.

LARSON, J.—This controversy arose as a result of an objection by remaindermen to a trustee's application for authority to dispose of and distribute assets of the George M. Butler Trust. It is between the executor of the estate of Nancy May Butler, deceased, who was the life tenant and trustee under the Will of her deceased husband, appellee herein, and Donald Gerald Tomanio, Jr. and Nancy Tomanio O'Brien, appellants herein, who are remaindermen under the Trust, and involves the ownership of certain corporate stock dividends and other distributions made during the lifetime of Nancy May Butler. Simply stated, the question presented is whether under the facts revealed these dividends and distributions shall be allocated to income or corpus.

George M. Butler died on June 1, 1951. Item II of his will provided as follows:

"It is my will and I do hereby give, devise and bequeath all the balance, residue and remainder of my property, real, personal and mixed, of which I may be the owner at my death, to my beloved wife, Nancy May Butler, as trustee, and in trust for the following purposes and under the following terms and conditions to-wit:

"1st. It is my will and I do hereby provide that my wife, Nancy May Butler, shall have all of the income from any and all property of which I may be the owner at my death during her full lifetime. I further provide that if it becomes necessary or if she should so desire, she shall also have the right to use such amount or amounts of the principal of my property as she may need or as she may desire from time to time and for the purpose of carrying out this provision of the trust, I hereby

grant to my wife, Nancy May Butler, as trustee, full and complete power to dispose of any of the property of which I may be the owner at my death, and to invest same in such other form as she may desire and to use thereof as she may desire, and I grant to her such power as such trustee without the necessity of application to court or report to court with reference thereto and without the necessity of her filing bond in connection with such trusteeship. * * *

"3rd. Subject to the life estate in my wife, Nancy May Butler, and subject to the conditions of the trusteeship as hereinbefore provided and subject to the bequests or devises made to Donald Tomanio and Barbara Tomanio, I do hereby provide that after the death of my wife, I give, devise and bequeath unto Jerrey Tomanio the sum of Fifteen Thousand ($15,000.00) Dollars, and Nancy Tomanio the sum of Fifteen Thousand ($15,000.00) Dollars, and I do hereby give and bequeath unto Jerrey Tomanio and Nancy Tomanio in addition to the bequests as hereinbefore made to them, all my bank stocks, which I estimate to be of the value of Fifteen Thousand ($15,000.00) Dollars upon this condition, that said bank stocks shall not be sold until Jerrey Tomanio and Nancy Tomanio shall each have attained the age of 21 years, it being my intention that during their minority that they only have and receive the dividends from such bank stocks."

At the time of his death George M. Butler owned, among other assets, 50 shares of stock in the State Savings Bank of Council Bluffs, Iowa. When his estate was closed the stock was transferred to Nancy May Butler, trustee, as provided under his will. The income was to go to her as beneficiary for her life.

As disclosed by Exhibit 2, State Savings Bank maintained three general accounts: undivided profits, which reflected the earnings from the regular bank business and from which cash dividends could be declared and transfers made to the other general accounts; surplus, from which transfers could be made to other accounts; and the capital account, which consisted of stockholders' contributions, natural growth, and transfers from the other accounts, from which stock dividends could be de-

clared. Whether the stock dividend is to be considered income or corpus in Iowa depends upon its source. When this trust was created, the undivided earnings and profits account disclosed a balance of $130,183 and the surplus account $150,000. At no time during the period of this trust did either account fall below those amounts. The book value of the stock at that time was $295.27 per share.

From 1952 to 1963 the total cash dividends paid on this stock amounted to $5155. Cash dividends were paid in every year except 1960 and 1961.

On March 2, 1953, a resolution was passed by the State Savings Bank whereby its officers were authorized and directed to debit the undivided earnings and profits account and credit the capital stock account in the amount of $50,000. Then stock certificates were issued accordingly and Nancy Butler, trustee, received 17 shares as a result of this resolution. A similar resolution was passed by State Savings Bank on July 11, 1961, and as a result thereof she received 67 shares of stock as her proportionate share of the $200,000 of undivided earnings and profits transferred to the capital stock account. Again on January 8, 1963, a similar resolution was passed and capital stock was increased $100,000 by debiting the undivided earnings and profits account. As a result of that resolution the bank issued 33 shares of stock to Nancy Butler, trustee. As of that date Nancy Butler, trustee, owned 167 shares of State Savings Bank stock, or 117 shares more than the 50 shares originally given her as trustee.

In October 1964 State Savings Bank presented the following proposal to its stockholders: (1) If 80 percent of the stockholders agreed, a new corporation, State Company, would be formed. (2) Each agreeing stockholder would surrender his stock in State Savings Bank and would receive for each share surrendered (a) one share of stock in State Company having a par value of $100 and (b) one debenture with a value of $200, payable on October 15, 1979, with an interest rate of $5\frac{1}{2}$ percent. The stockholders agreed to this proposal, and there is no serious objection to the trial court's finding that this did not

amount to an ademption of the legacy, although Nancy Butler, as trustee, participated therein.

Nancy Butler died on February 20, 1966. At that date as a result of the reorganization, in addition to the 50 State Company shares, she owned as trustee: (1) 117 shares of State Company stock (2) $33,400 State Company debenture note payable October 15, 1979, at 5½ percent interest, and (3) Savings Account No. 30041, in the amount of $33,400 plus accrued interest from date of deposit, representing the cash received at the time of the reorganization. The percentage of trustee ownership over these years remained at approximately 3.34 percent:

| Year | Stock Dividend | Shares Held | Shares Outstanding | % |
|------|------|------|------|------|
| 1951 | None | 50 | 1500 | 3.33 |
| 1953 | 17 | 67 | 2000 | 3.35 |
| 1961 | 67 | 134 | 4000 | 3.35 |
| 1963 | 33 | 167 | 5000 | 3.34 |

It further appears from Exhibit 2 that on the date of her death the book value of each share of equivalent stock, after making a proportionate adjustment for increase in total capital from December 31, 1965, to February 20, 1966, was approximately $296.23, indicating that there was no dilution of the value of the original 50 shares devised to the remaindermen.

On August 11, 1966, the State Savings Bank, as trustee in the matter of the Trust of George M. Butler, deceased, filed an Application for Authority to Dispose of and Distribute Assets. In its application the bank asked that the stock, debenture note and cash referred to as a return of capital should be distributed only in such manner as shall be determined by the court by reasons of the question of whether the gift, by surrender of the State Savings Bank stock and issuance of the new securities in place of the old, had been adeemed, and whether, if not adeemed, the gift should be limited to the original 50 shares of State Savings Bank stock inasmuch as the additional 117 shares were dividends and may have been income to which the life tenant was entitled.

On September 1, 1966, Donald Gerald Tomanio, Jr. and

Nancy Tomanio O'Brien, remaindermen, filed an objection to the application, stating that on the termination of the life estate of Nancy Butler, the stock, debenture note and return of capital, became the absolute property of the objectors. They further asked the court for an order requiring the trustee to turn over to them the above enumerated items.

On September 15, 1966, Finley Frost, as executor of the estate of Nancy M. Butler, deceased, filed an application in behalf of the estate of Nancy M. Butler alleging that the 117 shares of State Company stock, the debenture note in amount of $23,400, and return of capital in amount of $23,400, were income accrued to her during her lifetime and should be turned over to the estate of Nancy M. Butler. The trial court found no ademption and that the estate of Nancy Butler was entitled to stock dividends totaling 117 shares as well as the rights accruing therefrom.

There is no issue relative to the ownership of the 50 shares of State Company stock. This was and is corpus of the trust. The parties recognized this by consenting to the distribution to the remaindermen of the 50 shares, together with the $10,000 debenture note of State Company (50 shares x $200) and $10,000 cash representing a return of capital. The sole issue presented by this appeal is whether the 117 remaining shares of State Company stock, and the distributions connected therewith, should be allocated to corpus or income.

Propositions relied upon by appellants are that (1) dividends payable in shares of the declaring corporation are principal (2) a distribution by a corporation, which is return of capital and not distribution of earnings, is principal, and (3) the stock dividends, debenture note and return of capital all represented the natural growth of State Savings Bank and are the property of the remaindermen. The trial court rejected each of these propositions, and under the Iowa rule we must agree.

I. Three basic rules have developed in the United States for the apportionment of declared dividends, cash or stock, between life beneficiaries and remaindermen. See 32 Iowa Law Review 522-526. They are known as the Massachusetts rule,

the Pennsylvania rule and the Kentucky rule. 33 Am. Jur., Life Estates, Remainders etc., section 381.

The Massachusetts rule awards to corpus or remaindermen the entire extraordinary distribution or dividend from earnings if it is essentially a stock dividend, and to income or the life beneficiaries if it is essentially a cash dividend, without regard in either case as to the time covered by the accumulation of earnings. Minot v. Paine, 99 Mass. 101, 96 Am. Dec. 705; Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 34 L. Ed. 525. Thus, the method of transferring funds from one account to another is not important. If the dividend is made from the capital account, it is principal.

The Pennsylvania, or American rule, inquires as to the time covered by the accumulation of earnings from which the extraordinary dividend is paid and does not concern itself with the fund from which it is paid. Kalbach v. Clark, 133 Iowa 215, 110 N. W. 599, 12 L.R.A., N.S., 801, 12 Ann. Cas. 647. If the earnings were before the commencement of the life estate, they are allocable to corpus, and, if after, to income. However, if the dividends were declared from earnings accrued partly before and partly after the distribution, this rule apportions each respectively between the life tenant and remainderman. Earp's Appeal, 28 Pa. 368; Biddle's Appeal, 99 Pa. 278.

The Kentucky rule awards declared corporate dividends, whether in cash or in kind, to income. This rule, arbitrary and harsh in its application, seems to have been rejected in most jurisdictions and is no longer the law of Kentucky. Bowles v. Stilley's Executors et al., Ky., 267 S. W.2d 707, 44 A. L. R.2d 1273.

II. Appellants point out that at least twenty-seven states have adopted the Uniform Principal and Income Act in which the Massachusetts rule is incorporated, that the United States Supreme Court has applied this rule since 1890, and that although the first Restatement of Trusts adopted essentially the Pennsylvania rule, it later chose to adopt the Massachusetts rule. Restatement (Second) of Trusts, section 236 (1957). They recognize that we have followed the Iowa rule for the past sixty years, but due to the trend announced above and

other factors, urge us to adopt section 5 of the Uniform Principal and Income Act, and now to hold that stock dividends and returns of capital are properly allocated to corpus and not income. We are not persuaded to that view and believe our rule more nearly reaches the settlor's intent to provide all income to the beneficiaries of the trust without reducing the corpus. In 1907 we established a modified version of the Pennsylvania rule in Iowa. The legislature over the years has been aware of this pronouncement and could have either adopted the Uniform Principal and Income Act or the Massachusetts rule by statute if it had believed a change was desirable. It did not do so.

III. Although a majority of the courts have adopted the Massachusetts rule or a modification thereof, some courts, including Iowa, have preferred a rule which emphasizes the intention of the settlor rather than the mechanical or simplified corporate procedure found in the Massachusetts rule. In re Trusts of Young, 250 Iowa 126, 130, 93 N. W.2d 74, and citations.

It is now well settled in this jurisdiction that we apply a modification of the Pennsylvania rule to distributions of stock dividends. Kalbach v. Clark, supra, 133 Iowa 215, 110 N. W. 599; Lauman v. Foster, 157 Iowa 275, 135 N. W. 14, 50 L.R.A., N.S., 531; Sexton v. Percival Company, 189 Iowa 586, 177 N. W. 83; In re Estate of Etzel, 211 Iowa 700, 234 N.W. 210.

We start with the proposition that ordinary or pure dividends, whether in cash or in kind, that are declared out of earnings and profits of a corporation during the trust, whether current or accumulated, are income. Such ordinary dividends are properly allocated to the life tenant and not to the remainderman. It would seem a corollary to this is that any return of capital, through reorganization or otherwise, presumptively comes out of earnings and profits until there are no earnings and profits remaining. On the other hand, if the "so-called" dividend is a stock dividend and represents the corporate capital, i.e., represents nothing but the natural growth or increase in the value of the permanent property so there is merely a change in form of ownership, the stock is

properly allocable to the remainderman. Kalbach v. Clark and In re Estate of Etzel, both supra. We have also said that the mere fact that the directors of a corporation choose to call the distribution as one coming from capital, surplus, or earnings and profits, is not controlling, as this loses sight of the actual nature of the transaction. Kalbach v. Clark, supra.

The burden of showing that the distribution is actually one of capital is upon the person who claims it was such a distribution. Sexton v. Percival Company and Kalbach v. Clark, supra. In this jurisdiction under our rule the problem becomes one of tracing the origin of the dividend.

IV. Appellants contend that the stock dividends, debenture note and return of capital, all represented the natural growth of State Savings Bank. We cannot agree. It is quite clear the funds did not accrue from any increase in value of the permanent property of the corporation, the physical property, goodwill, or other tangible property. On the other hand, it appears from Exhibit 2 that the funds from which the stock dividends were declared were all traceable to the undivided earnings and profits account via transfers duly made by the directors for various reasons unimportant to this controversy. By these transfers the directors, of course, rejected the idea of declaring cash dividends from the ever-mounting earnings and profits account. Although under the Massachusetts rule this action would deny the stockholders a share in those accrued earnings, we believe it better to trace the funds and allocate the dividends according to their origin.

It would be unrealistic, and appellee does not contend that there has been no accretion to wealth of the corporation herein involved. The real question is whether the stock dividends, debenture note and return of capital were declared out of principal or earnings and profits. From an accounting aspect, the above were declared out of capital. However, as pointed out, in this jurisdiction it matters not from what account a dividend is declared. Where a corporation having actually made profits and then distributed such profits to the stockholders, the life tenant is entitled to receive them without regard to the form of the transaction. This, we believe,

best serves the settlor's purpose and is most fair and equitable. Lauman v. Foster, supra, 157 Iowa 275, 135 N.W. 14, and citations. In other words, just because the directors transfer an amount of money from earnings and profits to surplus, and from surplus to capital, and then declare a stock dividend, does not mean, in and of itself, that the earnings and profits transferred disappear and the distribution is one of capital. Such a rule, we think, would be easily administered but could result in an arbitrary and unfair distribution. It places too much discretion and authority in the corporate directors. In the case at bar each time a stock dividend was declared there were sufficient earnings and profits above the amounts shown in the undivided earnings and profits, and surplus, accounts at the inception of the trust, to cover the entire distribution, and they were transferred to the capital stock account to accomplish these distributions.

 Appellants suggest the stock dividends declared, although traceable to earnings, in fact represented growth in capital and, when declared, resulted in a dilution of the value of each share of stock, since more outstanding shares would be represented by the same amount of capital and surplus. This has not been the result here for, as noted, the book value of the stock remained approximately the same, $295.27 per share at the beginning and $296.23 per share at the termination of the trust. This is the true test as to whether there was any diminution in value of the shares bequeathed. We are satisfied that the remaindermen have failed to show the funds from which the stock dividends were declared came from natural growth of value of the corporate property, or that the distribution seriously affected the value of the corpus of the trust, but must agree with the trial court that the funds from which the stock dividends were declared came from the earnings and profits of the corporation during the trust period and should be the property of the life tenant. As bearing on this matter, see Bogert, Trusts and Trustees, Second Edition, section 845.

As we have noted, after each transfer and dividend transaction, the percentage of ownership held by the trustee did not vary to any material extent. Although it is true the remain-

dermen will not possess the same percentage of ownership of the corporation as did the settlor, it appears the bequest was not in percent of ownership in the bank but of 50 shares undiminished in book value, which did not include distributions based upon earnings of the corporation during the trust period.

The remaindermen were thus entitled to the benefit of the reorganization and were properly allocated 50 shares of stock in State Company, together with a $10,000 debenture note and $10,000 in cash, as the corpus of this trust.

The reorganization gave to the trustee 117 shares in State Company, together with a $23,400 debenture note and $23,400 in cash, all of which was traceable solely to earnings and profits of the State Savings Bank during the trust period. The trial court's decision that the estate of Nancy M. Butler was entitled thereto as income was correct.—Affirmed.

All JUSTICES concur.